## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| MASSACHUSETTS INSTITUTE OF TECHNOLOGY, <br><br> Plaintiff, <br><br> v. <br><br> TOSHIBA AMERICA INFORMATION SYSTEMS, INC., TOSHIBA AMERICA, INC., TOSHIBA CORPORATION, TOSHIBA LIFESTYLE PRODUCTS & SERVICES CORPORATION, and DOES 1 through 10, <br><br> Defendants. | C.A. No. _____ |

## COMPLAINT
[JURY TRIAL DEMANDED]

This suit is for breach of a patent license agreement, or, in the alternative, for patent infringement as to products that were the subject of the license agreement. This suit also seeks recovery for patent infringement with respect to both a patent and a defendant not covered by the license agreement.

## PARTIES

1.      Plaintiff Massachusetts Institute of Technology ("MIT"), a Massachusetts non-profit corporation, is a private research and educational institution located at 77 Massachusetts Avenue, Cambridge, Massachusetts 02139.

2.      Defendant Toshiba America Information Systems, Inc. ("TAIS") is a California corporation with a principal office at 9740 Irvine Blvd, Irvine, CA 92618. TAIS sells or has sold digital television products in the United States, including in Massachusetts, that use technology protected by patents owned by MIT. TAIS is the successor-by-merger to Toshiba America

Consumer Products, L.L.C. (the "LLC"), a New Jersey limited liability company, which is the successor-by-merger to Toshiba America Consumer Products, Inc. ("TACP"), a New Jersey corporation.  TACP is the licensee under a patent license agreement with MIT.

3.        Defendant Toshiba America, Inc. ("TAI") is a Delaware corporation with a principal office at 1251 Avenue of the Americas, Suite 4110, New York, New York 10020.  Upon information and belief, TAI is the parent company of TAIS.  TAI owns a number of technology companies offering consumer products, including digital television products, in the United States.

4.        Defendant Toshiba Corporation ("Toshiba Corp.") is a Japan corporation having a principal office at 1-1, Shibaura 1-chome, Minato-ku, Tokyo, Japan.  Upon information and belief, Toshiba Corp. is the parent company of TAI.  If TAI is not the parent company of TAIS, then upon information and belief Toshiba Corp. is also the parent company of TAIS.

5.        Defendant Toshiba Lifestyle Products & Services Corporation ("TLSC") is a Japan corporation having its principal office at 2-9, Suehiro-Cho, Ome, Tokyo 198-8710, Japan.  Upon information and belief, TLSC is a subsidiary of Toshiba Corp.

6.        Also named as defendants are Does 1 through 10, whose names and capacities are not known to MIT but whom MIT believes are business entities that either are within the Toshiba family of companies or acted in cooperation with or at the behest or direction of business entities within the Toshiba family companies.  Upon information and belief, Does 1 through 10 made, used, leased, imported into the United States, distributed, sold, offered for sale, or serviced products that entitled MIT to royalties under the license agreement or patents in suit.  MIT intends to amend this complaint to allege the names and capacities of these defendants when they have been ascertained.

7.     Where it is not clear to MIT which Toshiba entity to identify in an allegation, MIT uses the term "Toshiba" to refer to the applicable Toshiba entity, including those not currently identified as defendants, but which could later be named as defendants.

## JURISDICTION AND VENUE

8.     This Court has subject matter jurisdiction under 28 U.S.C. § 1332 because this is an action between citizens of different States or between citizens of a State and citizens of a foreign state and the amount in controversy exceeds $75,000 exclusive of interest and costs. This Court also has subject matter jurisdiction under 28 U.S.C. §§ 1331 and 1338(a) because this complaint alleges patent infringement claims.

9.     This Court has specific personal jurisdiction over the defendants because the claims arise out of their transaction of business, directly or through an agent, in Massachusetts, including, among other things, the making of a license agreement governed by Massachusetts law with a Massachusetts institution and the sale or offer for sale of products in Massachusetts covered by the license agreement and the patents in suit.  This Court has personal jurisdiction over the defendants for the additional reason that the causes of action arise, in part, out of the defendants' placement of products into the stream of commerce expecting them to be offered for sale and sold in Massachusetts.

10.    Venue is proper in the District of Massachusetts pursuant to 28 U.S.C. §§ 1391(b) and (c).

## FACTS COMMON TO ALL CLAIMS

11.    MIT is a pre-eminent research and educational institution dedicated to the advancement of knowledge and education of students in science, technology, and other areas of scholarship.

12.     MIT is the assignee and owns all right, title, and interest to U.S. Patent Nos. 5,187,575 ("the '575 patent"), 5,218,435 ("the '435 patent"), 5,408,270 ("the '270 patent"), 5,444,491 ("the '491 patent"), 5,485,210 ("the '210 patent"), 5,508,746 (the "746 patent"), 5,771,073 ("the '073 patent"), and RE40,691 ("the '691 patent"), including the right to sue for past infringements thereof.  All of these patents are now expired.  This complaint refers to these patents as the "Subject Patents."

13.     Among the inventions MIT has created are those related to digital television described in and claimed by the Subject Patents, many of which are licensed by numerous manufacturers of television products.

14.     These inventions and others resulted, in part, from MIT's pioneering research and development in digital television technology and related digital processing systems and methods, including its involvement in the Digital HDTV Grand Alliance (the "Grand Alliance") and its contributions to the technologies that later became part of the Advanced Television Systems Committee ("ATSC") Standards that now govern digital terrestrial television broadcasts in the United States.

15.     MIT has been involved in digital television and related research since at least the 1980s.  In the late 1980s, the Federal Communications Commission ("FCC") established the Advisory Committee on Advanced Television Service ("the Advisory Committee") to assist it in gathering and understanding information on future technologies that would enable the United States to transition from analog television to a new digital television standard.   After evaluating scores of submissions for the new digital TV standards, the Advisory Committee chose four finalists for further evaluation.  MIT was one of the finalists.

16.     The finalists then formed the Grand Alliance in 1993 to expedite the development

of standard advanced television technologies. The collaboration resulted in a unified proposal that successfully combined the best features of the finalists' digital approaches to high definition television, resulting in a system that distinguished itself during laboratory and field tests. The ATSC adopted and included in its proposed ATSC Standards specifications from the Grand Alliance's system.

17.     In November 1995, the Advisory Committee issued its final report, recommending the adoption of the ATSC Standards for digital terrestrial television broadcasts in the United States. In December 1996, the FCC adopted the major elements of the ATSC Standards, and mandated their use for digital television broadcasting in the United States. The adopted standards include fundamental technologies that had been developed by MIT.

18.     During the process of selecting new digital broadcasting standards, MIT not only made instrumental technical contributions, but also made significant impact on the evaluation process for those standards. MIT's contributions to the new digital broadcasting standard earned it an Emmy in 1997 and an R&D 100 Award in 1998, awards also earned by MIT's fellow members in the Grand Alliance.

19.     MIT has made significant investment to develop the new digital TV and related signal processing technology. As part of MIT's research and development effort, MIT has accumulated a portfolio of valuable patents on technologies related to digital televisions and digital signal processing ("MIT Digital Patent Portfolio"), including the Subject Patents. Patents from MIT's Digital Patent Portfolio have been licensed by numerous companies, including Toshiba's competitors, at fair and reasonable rates.

20.     The following types of products:

- digital televisions ("DTVs") that comply with the ATSC, MPEG-2, or MPEG-4 standards,

- Blu-ray disc and DVD players that comply with the MPEG-2 or MPEG-4 standards, and

- home theater and audio systems that comply with the MPEG-2 or MPEG-4 standards

necessarily fall within at least one claim of the Subject Patents.  All DTVs sold for use in the

United States comply with ATSC standards.  TACP and its successors knew or should have

known that, in the absence of a license from MIT, none of the foregoing types of products could

be made, used, leased, imported into the United States, distributed, sold, offered for sale, or

serviced without infringing at least one claim of one or more of the Subject Patents:  the '575,

'435, '491, '210, '073, and '691 patents covered Subject Products complying with ATSC

standards; the '435 and '210 patents covered Subject Products complying with MPEG-2

standards, and the '270 and '746 patents covered Subject Products complying with MPEG-4

standards.

21.     Aware that it needed a license from MIT to make, use, lease, import into the

United States, distribute, sell, offer for sale, or service the foregoing types of products, TACP

entered into a nonexclusive, royalty-bearing patent license agreement ("License") with MIT,

effective July 24, 2001, enabling TACP to practice the digital TV and digital signal processing

inventions covered by the patents set forth in the License ("Licensed Patents").  The Licensed

Patents include all but one of the Subject Patents.  The License granted the non-exclusive right

and license to make, have made, use, lease, offer to sell, sell, and import licensed products until

the expiration of the last to expire of the Licensed Patents, unless earlier terminated pursuant to

the terms of the License. The License obligated TACP to pay royalties to MIT on all licensed

products sold, used, or leased by TACP or its Affiliates, as defined in the License, as well as

annual license maintenance fees.  A true and correct copy of the License is attached as <u>Exhibit A</u>.

22.     As a result of mergers within the Toshiba family of companies, specifically TACP's merger into the LLC and the LLC's merger into TAIS, the LLC and then TAIS succeeded to and assumed all of TACP's assets and liabilities, including the License.

23.     Both before and after the effective date of the License, the defendants or their predecessors whose assets and liabilities they inherited, directly or through affiliates, subsidiaries, or other entities under their ownership or control, made, had made, used, leased, imported into the United States, distributed, sold, offered to sell, or serviced in the United States, including in Massachusetts, audiovisual products that practiced at least one claim of the Subject Patents and Licensed Patents under brand names that Toshiba owned or licensed (the "Subject Products").  The Subject Products include, but are not limited to, (i) digital televisions (DTVs) that comply with the ATSC, MPEG-2, or MPEG-4 standards, (ii) Blu-ray disc and DVD players that comply with the MPEG-2 or MPEG-4 standards, and (iii) home theater and audio systems that comply with the MPEG-2 or MPEG-4 standards.  Many of the Subject Products are or were sold or offered for sale at retail stores in Massachusetts and in online stores and thus are or were available for purchase and consumption in Massachusetts.

24.     It was known or it should have been obvious to any Toshiba entity whether DTVs that it sold complied with the ATSC, MPEG-2, or MPEG-4 standards and whether Blu-ray disc and DVD players and home theater and audio systems complied with MPEG-2 or MPEG-4 standards.  It was also known or should have been obvious to any Toshiba entity that any such products would fall within at least one claim of one or more of the Subject Patents and that, as long as such patents had not expired, such products needed a license from MIT to be made, used, leased,  imported, distributed, sold, or offered for sale in the United States.

25.     TACP or the LLC reported some sales of Subject Products, and paid some

royalties, to MIT under the License for sales through December 2010.

26.     In 2010, MIT discovered that the LLC and TACP had underreported sales and underpaid royalties due to MIT under the License.

27.     Beginning in January 2011 and continuing through the present, the LLC and its successors stopped reporting the particulars of the business they or their Affiliates conducted under the License, and they ceased paying royalties and license maintenance fees to MIT altogether, with no notice to MIT and no lawful basis for doing so.  Nonetheless the defendants, or related companies for whose conduct the defendants are responsible, continued to make, have made, use, lease, import into the United States, distribute, sell, offer to sell, or service Subject Products for which royalties were payable to MIT under the License.

28.     With the possible exception of the '575 Patent, all of the Subject Patents were still in force at the end of 2010.

29.     MIT has attempted to secure performance of the LLC's or its successor's obligations under the License, but without success.  In connection with MIT's attempts to secure performance under the License, MIT notified the Toshiba representatives who were assigned to deal with MIT that MIT owned the '691 Patent, which is one of the Subject Patents but not a Licensed Patent, and that the Subject Products also fell within the scope of at least one claim of the '691 Patent.

30.     At no time has Toshiba asserted that the Licensed Patents were invalid or unenforceable or that Toshiba had reported on and paid royalties on all licensed products that it had used, sold, or leased.

31.     Toshiba Corp. and TAI do business through multiple subsidiaries.  They have a principal/agency or similar relationship with these subsidiaries and exercise some form of

pervasive control over them.  These entities are engaged in a common enterprise and have

intermingled their activities in a confusing way, including through merger activity, while

substantially disregarding their separate nature.  In this matter, they have used these inter-

corporate relationships and entities to generate revenue for the Toshiba organization by making,

having made, using, leasing, importing into the United States, distributing, selling, offering to

sell, or servicing products that use or incorporate inventions on which MIT holds patents,

without accounting to MIT for royalties owed under the License, to make it difficult for MIT to

enforce its rights and collect royalties owed, and to sell Subject Products in the United States

through TLSC  without obtaining a license from MIT for such sales.  As a result, Toshiba Corp.

and TAI should be deemed the alter ego of each other and of TAIS and TLSC, such that each

should be held liable to MIT for the liability adjudged against any defendant and such that each

should be held liable for the infringing activity of any Toshiba subsidiary.

32.    All conditions precedent to the enforcement of MIT's rights have been performed

or have occurred.

33.    In Count One below, MIT sues for breach of contract to enforce its rights under

the License.  If Toshiba takes the position and establishes that the license agreement and TAIS's

obligations under that agreement were terminated, which MIT denies, then Toshiba would owe

MIT royalties or damages for patent infringement or for infringing activity falling outside the

protection of the license agreement.  MIT has therefore pleaded, in the alternative to Count One,

claims for patent infringement in Counts Two through Eight.  Counts Nine and Ten are not

pleaded in the alternative to any count because one count asserts a claim for infringement of a

patent that is not a Licensed Patent and the other asserts a claim for infringement against a

defendant that was neither a party to the License nor, upon information and belief, a party who

could claim the benefit of the License.  Count Eleven is not pleaded in the alternative to any

count.

## COUNT ONE
### (Breach of contract)

34.     MIT incorporates by reference paragraphs 1 through 33 of this Complaint as if set

forth fully herein.

35.     TAIS and its predecessors breached the License by underreporting, and then

ceasing to report, the business conducted by them and their Affiliates under the License, by

failing and refusing to pay royalties on licensed products sold, used, or leased by or for them or

their Affiliates, and by failing and refusing to pay annual license maintenance fees since as early

as 2011.  These breaches have harmed MIT and caused MIT to sustain damages in an amount

that MIT estimates as exceeding $25 million, and which will be determined more definitively at

trial.

36.     The defendants are jointly and severally liable for the damages caused by these

breaches.

## COUNT TWO
### (Infringement of U.S. Patent No. 5,187,575)

37.     MIT incorporates by reference paragraphs 1 through 33 of this Complaint as if set

forth fully herein.

38.     The '575 patent, entitled "Source Adaptive Television System," was duly issued

on February 16, 1993.  A true and correct copy of the '575 patent is attached as Exhibit B.

39.     From its issuance until its expiration on February 16, 2010, the '575 patent had

been in full force and effect.

40.     TAIS and its predecessors directly infringed at least one claim of the '575 patent,

in violation of 35 U.S.C. § 271(a), by, among other things, making, having made, using, leasing, offering to sell, selling, or importing into the United States Subject Products falling within the scope of one or more claims of the '575 patent without paying royalties to MIT.

41.     Upon information and belief, TAIS and its predecessors induced the infringement of at least one claim of the '575 patent, in violation of 35 U.S.C. § 271(b), by, among other things, actively, knowingly, intentionally, or recklessly aiding and abetting others (including distributors, customers, and end users) to make, have made, use, lease, offer for sale, sell, or import into the United States Subject Products falling within the scope of one or more claims of the '575 patent without paying royalties to MIT.  This aiding and abetting was done through activities such as marketing these products, and creating or distributing data sheets, application notes, or similar materials with instructions on using these products, specifically intending that the recipients would engage in infringing activities.

42.     Upon information and belief, TAIS and its predecessors contributed to the infringement of at least one claim of the '575 patent, in violation of 35 U.S.C. § 271(c), by, among other things, making, having made, using, leasing, offering to sell, selling, or importing into the United States products or components that embodied a material part of one or more inventions claimed in the '575 patent without paying royalties to MIT, knowing that such products or components were specially made or specially adapted for use in an infringement of these claims and that they were not staple articles or commodities of commerce suitable for a substantial non-infringing use.

43.     As a result of the foregoing, MIT has been harmed and is entitled to recover damages pursuant to 35 U.S.C. § 284 in an amount that will be determined at trial.

44.     The defendants are jointly and severally liable for the damages caused by this

infringing activity.

## COUNT THREE
### (Infringement of U.S. Patent No. 5,218,435)

45.     MIT incorporates by reference paragraphs 1 through 33 of this Complaint as if set forth fully herein.

46.     The '435 patent, entitled "Digital Advanced Television Systems," was duly issued on June 8, 1993.  A true and correct copy of the '435 patent is attached as Exhibit C.

47.     From its issuance until its expiration on February 20, 2011, the '435 patent had been in full force and effect.

48.     TAIS and its predecessors directly infringed at least one claim of the '435 patent, in violation of 35 U.S.C. § 271(a), by, among other things, making, having made, using, leasing, offering to sell, selling, or importing into the United States Subject Products falling within the scope of one or more claims of the '435 patent without paying royalties to MIT.

49.     Upon information and belief, TAIS and its predecessors induced the infringement of at least one claim of the '435 patent, in violation of 35 U.S.C. § 271(b), by, among other things, actively, knowingly, intentionally, or recklessly aiding and abetting others (including distributors, customers, and end users) to make, have made, use, lease, offer for sale, sell, or import into the United States Subject Products falling within the scope of one or more claims of the '435 patent without paying royalties to MIT.  This aiding and abetting was done through activities such as marketing these products, and creating or distributing data sheets, application notes, or similar materials with instructions on using these products, specifically intending that the recipients would engage in infringing activities.

50.     Upon information and belief,  TAIS and its predecessors contributed to the infringement of at least one claim of the '435 patent, in violation of 35 U.S.C. § 271(c), by,

among other things, making, having made, using, leasing, offering to sell, selling, or importing

into the United States products or components that embodied a material part of one or more

inventions claimed in the '435 patent without paying royalties to MIT, knowing that such

products or components were specially made or specially adapted for use in an infringement of

these claims and that they were not staple articles or commodities of commerce suitable for a

substantial non-infringing use.

51.     As a result of the foregoing, MIT has been harmed and is entitled to recover

damages pursuant to 35 U.S.C. § 284 in an amount that will be determined at trial.

52.     The defendants are jointly and severally liable for the damages caused by this

infringing activity.

### COUNT FOUR
### (Infringement of U.S. Patent No. 5,408,270)

53.     MIT incorporates by reference paragraphs 1 through 33 of this Complaint as if set

forth fully herein.

54.     The '270 patent, entitled "Advanced Television System," was duly issued on

April 18, 1995.  A true and correct copy of the '270 patent is attached as Exhibit D.

55.     From its issuance until its expiration on June 24, 2013, the '270 patent had been

in full force and effect.

56.     TAIS and its predecessors directly infringed at least one claim of the '270 patent,

in violation of 35 U.S.C. § 271(a), by, among other things, making, having made, using, leasing,

offering to sell, selling, or importing into the United States Subject Products falling within the

scope of one or more claims of the '270 patent without paying royalties to MIT.

57.     Upon information and belief, TAIS and its predecessors induced the infringement

of at least one claim of the '270 patent, in violation of 35 U.S.C. § 271(b), by, among other

things, actively, knowingly, intentionally, or recklessly aiding and abetting others (including distributors, customers, and end users) to make, have made, use, lease, offer for sale, sell, or import into the United States Subject Products falling within the scope of one or more claims of the '270 patent without paying royalties to MIT.  This aiding and abetting was done through activities such as marketing these products, and creating or distributing data sheets, application notes, or similar materials with instructions on using these products, specifically intending that the recipients would engage in infringing activities.

58.     Upon information and belief, TAIS and its predecessors contributed to the infringement of at least one claim of the '270 patent, in violation of 35 U.S.C. § 271(c), by, among other things, making, having made, using, leasing, offering to sell, selling, or importing into the United States products or components that embodied a material part of one or more inventions claimed in the '270 patent without paying royalties to MIT, knowing that such products or components were specially made or specially adapted for use in an infringement of these claims and that they were not staple articles or commodities of commerce suitable for a substantial non-infringing use.

59.     As a result of the foregoing, MIT has been harmed and is entitled to recover damages pursuant to 35 U.S.C. § 284 in an amount that will be determined at trial.

60.     The defendants are jointly and severally liable for the damages caused by this infringing activity.

## COUNT FIVE
### (Infringement of U.S. Patent No. 5,444,491)

61.     MIT incorporates by reference paragraphs 1 through 33 of this Complaint as if set forth fully herein.

62.     The '491 patent, entitled "Television System with Multiple Transmission

Formats," was duly issued on August 22, 1995.  A true and correct copy of the '491 patent is attached as Exhibit E.

63.     From its issuance until its expiration on February 26, 2013, the '491 patent had been in full force and effect.

64.     TAIS and its predecessors directly infringed at least one claim of the '491 patent, in violation of 35 U.S.C. § 271(a), by, among other things, making, having made, using, leasing, offering to sell, selling, or importing into the United States Subject Products falling within the scope of one or more claims of the '491 patent without paying royalties to MIT.

65.     Upon information and belief, TAIS and its predecessors induced the infringement of at least one claim of the '491 patent, in violation of 35 U.S.C. § 271(b), by, among other things, actively, knowingly, intentionally, or recklessly aiding and abetting others (including distributors, customers, and end users) to make, have made, use, lease, offer for sale, sell, or import into the United States Subject Products falling within the scope of one or more claims of the '491 patent without paying royalties to MIT.  This aiding and abetting was done through activities such as marketing these products, and creating or distributing data sheets, application notes, or similar materials with instructions on using these products, specifically intending that the recipients would engage in infringing activities.

66.     Upon information and belief, TAIS and its predecessors contributed to the infringement of at least one claim of the '491 patent, in violation of 35 U.S.C. § 271(c), by, among other things, making, having made, using, leasing, offering to sell, selling, or importing into the United States products or components that embodied a material part of one or more inventions claimed in the '491 patent without paying royalties to MIT, knowing that such products or components were specially made or specially adapted for use in an infringement of

these claims and that they were not staple articles or commodities of commerce suitable for a substantial non-infringing use.

67.     As a result of the foregoing, MIT has been harmed and is entitled to recover damages pursuant to 35 U.S.C. § 284 in an amount that will be determined at trial.

68.     The defendants are jointly and severally liable for the damages caused by this infringing activity.

## COUNT SIX
## (Infringement of U.S. Patent No. 5,485,210)

69.     MIT incorporates by reference paragraphs 1 through 33 of this Complaint as if set forth fully herein.

70.     The '210 patent, entitled "Digital Advanced Television Systems," was duly issued on January 16, 1996.  A true and correct copy of the '210 patent is attached as Exhibit F.

71.     From its issuance until its expiration on February 20, 2011, the '210 patent had been in full force and effect.

72.     TAIS and its predecessors directly infringed at least one claim of the '210 patent, in violation of 35 U.S.C. § 271(a), by, among other things, making, having made, using, leasing, offering to sell, selling, or importing into the United States Subject Products falling within the scope of one or more claims of the '210 patent without paying royalties to MIT.

73.     Upon information and belief, TAIS and its predecessors induced the infringement of at least one claim of the '210 patent, in violation of 35 U.S.C. § 271(b), by, among other things, actively, knowingly, intentionally, or recklessly aiding and abetting others (including distributors, customers, and end users) to make, have made, use, lease, offer for sale, sell, or import into the United States Subject Products falling within the scope of one or more claims of the '210 patent without paying royalties to MIT.  This aiding and abetting was done through

activities such as marketing these products, and creating or distributing data sheets, application notes, or similar materials with instructions on using these products, specifically intending that the recipients would engage in infringing activities.

74.     Upon information and belief, TAIS and its predecessors contributed to the infringement of at least one claim of the '210 patent, in violation of 35 U.S.C. § 271(c), by, among other things, making, having made, using, leasing, offering to sell, selling, or importing into the United States products or components that embodied a material part of one or more inventions claimed in the '210 patent without paying royalties to MIT, knowing that such products or components were specially made or specially adapted for use in an infringement of these claims and that they were not staple articles or commodities of commerce suitable for a substantial non-infringing use.

75.     As a result of the foregoing, MIT has been harmed and is entitled to recover damages pursuant to 35 U.S.C. § 284 in an amount that will be determined at trial.

76.     The defendants are jointly and severally liable for the damages caused by this infringing activity.

## COUNT SEVEN
### (Infringement of U.S. Patent No. 5,508,746)

77.     MIT incorporates by reference paragraphs 1 through 33 of this Complaint as if set forth fully herein.

78.     The '746 patent, entitled "Advanced Television System," was duly issued on April 16, 1996.  A true and correct copy of the '746 patent is attached as Exhibit G.

79.     From its issuance until its expiration on June 24, 2013, the '746 patent had been in full force and effect.

80.     TAIS and its predecessors directly infringed at least one claim of the '746 patent,

in violation of 35 U.S.C. § 271(a), by, among other things, making, having made, using, leasing, offering to sell, selling, or importing into the United States Subject Products falling within the scope of one or more claims of the '746 patent without paying royalties to MIT.

81.     Upon information and belief, TAIS and its predecessors induced the infringement of at least one claim of the '746 patent, in violation of 35 U.S.C. § 271(b), by, among other things, actively, knowingly, intentionally, or recklessly aiding and abetting others (including distributors, customers, and end users) to make, have made, use, lease, offer for sale, sell, or import into the United States Subject Products falling within the scope of one or more claims of the '746 patent without paying royalties to MIT.  This aiding and abetting was done through activities such as marketing these products, and creating or distributing data sheets, application notes, or similar materials with instructions on using these products, specifically intending that the recipients would engage in infringing activities.

82.     Upon information and belief, TAIS and its predecessors contributed to the infringement of at least one claim of the '746 patent, in violation of 35 U.S.C. § 271(c), by, among other things, making, having made, using, leasing, offering to sell, selling, or importing into the United States products or components that embodied a material part of one or more inventions claimed in the '746 patent without paying royalties to MIT, knowing that such products or components were specially made or specially adapted for use in an infringement of these claims and that they were not staple articles or commodities of commerce suitable for a substantial non-infringing use.

83.     As a result of the foregoing, MIT has been harmed and is entitled to recover damages pursuant to 35 U.S.C. § 284 in an amount that will be determined at trial.

84.     The defendants are jointly and severally liable for the damages caused by this

infringing activity.

## COUNT EIGHT
### (Infringement of U.S. Patent No. 5,771,073)

85.     MIT incorporates by reference paragraphs 1 through 33 of this Complaint as if set forth fully herein.

86.     The '073 patent, entitled "Advanced Television System Using a Different Encoding Technique for Non-Image Areas," was duly issued on June 23, 1998.  A true and correct copy of the '073 patent is attached as Exhibit H.

87.     From its issuance until its expiration on June 23, 2015, the '073 patent had been in full force and effect.

88.     TAIS and its predecessors directly infringed at least one claim of the '073 patent, in violation of 35 U.S.C. § 271(a), by, among other things, making, having made, using, leasing, offering to sell, selling, or importing into the United States Subject Products falling within the scope of one or more claims of the '073 patent without paying royalties to MIT.

89.     Upon information and belief, TAIS and its predecessors induced the infringement of at least one claim of the '073 patent, in violation of 35 U.S.C. § 271(b), by, among other things, actively, knowingly, intentionally, or recklessly aiding and abetting others (including distributors, customers, and end users) to make, have made, use, lease, offer for sale, sell, or import into the United States Subject Products falling within the scope of one or more claims of the '073 patent without paying royalties to MIT.  This aiding and abetting was done through activities such as marketing these products, and creating or distributing data sheets, application notes, or similar materials with instructions on using these products, specifically intending that the recipients would engage in infringing activities.

90.     Upon information and belief, TAIS and its predecessors contributed to the

infringement of at least one claim of the '073 patent, in violation of 35 U.S.C. § 271(c), by, among other things, making, having made, using, leasing, offering to sell, selling, or importing into the United States products or components that embodied a material part of one or more inventions claimed in the '073 patent without paying royalties to MIT, knowing that such products or components were specially made or specially adapted for use in an infringement of these claims and that they were not staple articles or commodities of commerce suitable for a substantial non-infringing use.

91.     As a result of the foregoing, MIT has been harmed and is entitled to recover damages pursuant to 35 U.S.C. § 284 in an amount that will be determined at trial.

92.     The defendants are jointly and severally liable for the damages caused by this infringing activity.

**COUNT NINE**
**(Infringement of U.S. Patent No. RE40,691)**

93.     MIT incorporates by reference paragraphs 1 through 33 of this Complaint as if set forth fully herein.

94.     The '691 patent, entitled "Encoding Decoding and Compression of Audio-Type Data Using Reference Coefficients Located Within a Band of Coefficients," was duly reissued from U.S. Patent 5,640,486 on March 31, 2009.  A true and correct copy of the '691 patent is attached as Exhibit I.

95.     From its issuance until its expiration on November 15, 2012, the '691 patent had been in full force and effect.

96.     TAIS and its predecessors directly infringed at least one claim of the '691 patent, in violation of 35 U.S.C. § 271(a), by, among other things, making, having made, using, leasing, offering to sell, selling, or importing into the United States Subject Products falling within the

scope of one or more claims of the '691 patent.

97.     As a result of the foregoing, MIT has been harmed and is entitled to recover damages pursuant to 35 U.S.C. § 284 in an amount that will be determined at trial.

98.     The defendants are jointly and severally liable for the damages caused by TAIS and its predecessors.

## COUNT TEN
### (Infringement of U.S. Patent No. 5,771,073 By TLSC)

99.     MIT incorporates by reference paragraphs 1 through 33, 86, and 87 of this Complaint as if set forth fully herein.

100.    TLSC directly infringed at least one claim of the '073 patent, in violation of 35 U.S.C. § 271(a), by, among other things, making, having made, using, leasing, offering to sell, selling, or importing into the United States Subject Products falling within the scope of one or more claims of the '073 patent without paying royalties to MIT.

101.    Upon information and belief, TLSC induced the infringement of at least one claim of the '073 patent, in violation of 35 U.S.C. § 271(b), by, among other things, actively, knowingly, intentionally, or recklessly aiding and abetting others (including distributors, customers, and end users) to make, have made, use, lease, offer for sale, sell, or import into the United States Subject Products falling within the scope of one or more claims of the '073 patent without paying royalties to MIT.  This aiding and abetting was done through activities such as marketing these products, and creating or distributing data sheets, application notes, or similar materials with instructions on using these products, specifically intending that the recipients would engage in infringing activities.

102.    Upon information and belief, TLSC contributed to the infringement of at least one claim of the '073 patent, in violation of 35 U.S.C. § 271(c), by, among other things, making,

having made, using, leasing, offering to sell, selling, or importing into the United States products or components that embodied a material part of one or more inventions claimed in the '073 patent without paying royalties to MIT, knowing that such products or components were specially made or specially adapted for use in an infringement of these claims and that they were not staple articles or commodities of commerce suitable for a substantial non-infringing use.

103.     As a result of the foregoing, MIT has been harmed and is entitled to recover damages pursuant to 35 U.S.C. § 284 in an amount that will be determined at trial.

104.     The defendants are jointly and severally liable for the damages caused by this infringing activity.

## COUNT ELEVEN
### (Unjust Enrichment)

105.     MIT incorporates by reference paragraphs 1 through 104 of this Complaint as if set forth fully herein.

106.     Defendants have been unjustly enriched by making, having made, using, leasing, offering for sale, selling or importing into the United States products covered by the foregoing patents held by MIT without having paid royalties or other compensation to MIT.  Accordingly, Defendants are liable to MIT to the extent that they have been unjustly enriched.

## PRAYERS FOR RELIEF

WHEREFORE, MIT prays that this Court:

A.     Determine the damages sustained by MIT under each count of this Complaint and award MIT judgment in those amounts against all defendants who are adjudged to be liable, trebled to the fullest extent to which MIT is entitled under 35 U.S.C. § 284, together with interest and costs of suit;

B.     Award MIT its attorneys' fees and expenses pursuant to 35 U.S.C. § 285;

C.     Award MIT such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

MASSACHUSETTS INSTITUTE OF
TECHNOLOGY,

By its attorneys,


/s/ *Kenneth R. Berman*
Kenneth R. Berman (BBO 040320)
*kberman@nutter.com*
Nutter McClennen & Fish, LLP
155 Seaport Boulevard
Boston, MA 02210
617-439-2000

Date: February 5, 2016


2883867.4